Good morning, your honors. You don't have your handkerchief in your pocket today. I apologize, your honor. If you will please the court, on behalf of Petitioner Rukhshana Hossein Al-Amiri, Garish Serein. This matter has been up to the Board of Immigration Appeals three times. And the last time, the Board of Immigration Appeals claimed the petitioner was not a credible witness and provided no example of any kind of incredible or adverse testimony. In fact, there was no adverse testimony they could provide because Petitioner at all times was a credible witness. The BIA relied on its precedent decision on the matter of OD, which dealt with counterfeit documentation. There wasn't one single counterfeit documentation provided by Petitioner in this matter. And still, they stated that the matter of OD applies in this case. And then, to make matters worse, the immigration judge deported my client, Petitioner, to India, a country of which she is not a native or a citizen of. At no time did they amend the charge. At no time did they change the order to show cause. At no time did they provide any proof she was a native and citizen of India. What you have in this matter also is prosecutorial misconduct. They have databases to which my client has no access to. This court recently, in the matter of Dent, came out with a precedent decision, a very important decision, that an alien should have all her documents of entry and her admissions, and it should be provided by the government. In this instance, no such documents were ever provided. There was an overseas investigation conducted in violation of my client's privacy rights, in violation of her constitutional rights, and she never gave any permission for that. Well, at some point, you're going to have to deal with what's really before us. And let's start with the last point. You say she's being sent to India, there's an overseas investigation. Which was in India that violates your client's rights? You insist that she's never been to India. So how could it violate her rights? Because if you are conducting an overseas investigation, the law requires from the ACFR that my client's consent be provided, especially when she filed a claim for asylum. Her husband's from India. Where does it say that her consent must be obtained? My understanding of the under ACFR 208.6 states that it's a confidential regulation, and it protects the asylum applicant and safeguards it from disclosing publicly. But where does it say that your client's permission is required? I believe it's stated in the regulation that it requires her signature and her consent for any kind of overseas investigation. Well, it says the disclosure of information does, but where was this disclosure of information contained in her application for asylum? She never provided that disclosure. The government conducted an overseas investigation. Where was their disclosure by the government? To the Indian government. What proof is there of that? They sent an investigator to a city in Pune, and they went to some individual, showed certain photographs allegedly of my client. I don't know what photographs they showed. They took statements of individuals as well, somewhere again in the city of Pune, making allegations. Other than your reference to photographs, what indication is there that there was any disclosure of information about your client? Ordinarily, investigations are done to obtain information, not to give it out. In this instance, according to Mr. Sharma, the immigration agent who is based in New Delhi, he went and he spoke to individuals in India pertaining to my client's whereabouts, her husband and her children, and he went to a location where she allegedly resided. And so what there disclosed information contained in her asylum application? I mean, he's trying to ascertain if she's the person she claims to be. He goes to a place she claims not to have been, and you're complaining that's prejudicial to her somehow, and he confirms her identity appears to be something other than what she said. Now, how does that disclose information in her asylum application? Your Honor, the problem we have is I don't know what photographs were shown. I don't know what discussions. What difference does it make? I mean, photographs are photographs. How does that disclose something that's in her asylum application? How does that indicate she's applying for asylum? Well, I don't believe you can conduct an overseas investigation without informing my client. Well, you just stated that belief, and you've claimed it's part of the regulation, but you can't point me to a part of the regulation that says what you say it says. The regulation says what it says, and what I see is it concerns disclosure of information, not the ability to conduct an investigation. I just believe you require her consent, and you require her not – she should be informed what is being done. But should isn't the regulation, though, is it? It doesn't say she should be informed of what's done. It shouldn't say that the investigator has to tell her everything he's going to do. It says that you don't disclose information that relates to her asylum application. Well, we don't know what was discussed. But you seem to, because you're telling me there was a violation. I'm telling you there's a violation based on an investigation of an officer who didn't sign any documents, who stated he went over there. I don't know what he said to this individual, except what he's alleging. I never had access to this individual. But apparently, according to your version, it doesn't matter because she doesn't have anything to do with India, so he wouldn't have found out anything about her. I'm stating her husband resided in India, and that has an effect. Two circuits have come out and stated that it can be viewed as retaliation, and it can be viewed as basically giving her another claim for asylum when they do that. The issue over here is, is the person, I mean, if you have a database and they're going into claims, Are you saying she needs asylum from India? I mean, the revelation that she's seeking asylum from the Indian authorities has nothing to do with her claim that she wants asylum from Iran. They're not next door to each other. Yeah, Yana under Raymond v. Gonzalez and Lynn v. U.S. Department, they say once an agency breaches the subject, it places her to a new risk of persecution or torture. I don't know if anything's going to happen to her in India. No, she's seeking asylum from Iran. That is correct. Right. And they just wanted to know if this person had lived and I believe taught in a certain place in India. And they had a picture, and they showed it to some people, and they said yes, she taught here, she lived here. So how does that put her in jeopardy? How does it put her in jeopardy? Because we don't know what pictures were shown, we don't know what... What does it matter? They showed the pictures of her, they identified her to the Indian authorities. How does that risk her, how does it give her a new cause of action for asylum from Iran? Because if she was married to an Indian citizen and she's being deported to India, I don't know what risk it places her at this time, but my real question... Her only risk in asylum is Iran, not India. She was deported to India in the order. But she's not claiming asylum from India, is she? No, but she was married to an Indian citizen. Next. The question before you, really, is why would they conduct an investigation in India? If you get another... Well, they were verifying some information, but if you get other arguments, that would be a good time to make it. Well, the other argument over here is they never provided any documentation that she was a citizen or native of India. They provided no passport, no documentation she ever resided in India. They provided again... She was the one that entered, and she doesn't have any evidence of her entry, except her say-so. She doesn't have any kind of documentation that supports the proposition that she entered, when she said she did. And her personal information appears to match the entry date of somebody who's from India. That's the evidentiary basis. Now, you may try to argue that's not substantial evidence, but there's no requirement that affirmative disproof be offered up. Her story doesn't check out. What we're stating, Your Honor, is that basically then you should change it to the order to show cause that she is a native and citizen of India, so we can deny it, and then we can have a contested hearing on that issue. The issue before is that they never ever alleged she was a citizen or native of India. Well, whose burden is it to prove who she is? Excuse me, Your Honor? Whose burden is it to prove who she is? Well, according to the regulations, in order to show cause, the alienage is up to the government to prove. Well, your client doesn't dispute alienage. Your client acknowledges she's not a citizen. The question is, who is she? And I believe it's the burden on the petitioner, the alien, the language changes. The burden's on your client to prove who she is if she's trying to pursue a claim for asylum. Under the order to show cause or the notice to appear, the burden falls on the government to prove alienage. Did your client dispute removability? My client stated she was a citizen. No, she didn't dispute removability. So I think we're kind of past that hurdle, aren't we? Well, how can you then deport her to India if she's a citizen and native of Iran? Would she prefer Iran? Excuse me? Does she want to go to Iran instead? Well, I mean, the government might accommodate that if that's what she wants. Well, we showed basically that she has a well-founded fear of returning to Iran and she can be... So she doesn't want to go to Iran? Correct, and she can be killed in Iran because she changed her religion from a Muslim to a Zoroastrian. The issue before you at this time is can the government do what they did in this matter? And if the Court of Appeals believes that they can and they can go through databases and they can go on fishing expeditions, then my client has no argument over here. She presented documentation of how she came into this country. She provided credible testimony of how she entered. She provided a birth certificate of citizenship as well as live testimony of an individual who placed her in Iran. Thank you very much. Well, we'll hear from the government. May it please the Court, my name is Edward Duffy and I represent the respondent, the Attorney General, in this matter. The Board's decision found that the petitioner was incredible and that she failed to prove she was a refugee from Iran is supported by substantial evidence in the record. Petitioner misrepresented the date and time she entered the United States and what country she entered from. And the immigration judge found that she failed to prove that she was a citizen of Iran at the time she entered the United States. And she has the burden of proof within her, the asylum contest, to prove that she is a refugee from her country of nationality and that she cannot be protected in her country of nationality. From the immigration record submitted to the Immigration Court, the computerized record showed that Rafsana Al Amiri, born on July 1, 1960, the same as the petitioner in which she was born, entered the United States at a date and time different from what she claimed a year earlier, in fact, from what she claimed in her asylum application, which formed the basis for the order to show cause. That evidence alone is enough to call into dispute whether or not she can prove that she is a person of Iranian nationality and therefore she cannot seek asylum from Iran if she is not of Iranian nationality. She had the protection, from the record it appears she had the protection, of the Indian government and at some point in time became a citizen of India. Based on that fact alone, Your Honor, along with the corroborating evidence showing her date of birth and her California marriage license which showed that she was also born on July 1, 1960, that substantial evidence supports the immigration judges and the board's decision that she was not a citizen of Iran at the time she entered and therefore does not qualify as a refugee. Based on that evidence alone... Counsel, I note here that in AR 138 the IJ says, I found most compelling the NIIS record establishing that the respondent entered the United States on April 25, 1991 as a citizen of India. Correct, Your Honor. Do we have that NIIS record in our record? Yes, Your Honor. It's a computerized record in the record. Can you give me a citation for that, please? I will, Your Honor. It's AR 8487, administrative record 487. 487, thank you. And when Ms. Allenberry was confronted with that, she denied it was her. That was her only defense to it. Was it AR 847? No, 487. 487, Your Honor. 487. Thank you. Wasn't there also some issue as to whether she was the mother of her children? There was another woman named Mellifore who was the mother of the children? Well, Your Honor, there was inconsistent evidence. Her current husband, who the evidence can form a conclusion that she may have been or was likely her husband in India at some point, but that's not necessarily an issue in the case. But her current husband entered the United States shortly after she did, and the birth certificate of the daughter of that marriage shows that the mother's name was also Roxana and then it was Bethina, was the Roxana Shura Bethina, and that the daughter was born in India. The immigration judge took that evidence to say that there was a high possibility that it was Ms. Allenberry's daughter in that case, and the daughter was born in 1975 in India. Ms. Allenberry claimed that there was a woman named Mellifore who had been married to her present husband and she was the mother of the child. Correct, Your Honor, but the birth record shows that the mother's name was Roxana. That's not very much like Mellifore. That's not like Mellifore, Your Honor. Again, the whole investigation in India was to attempt to confirm identity, and also her husband also had an asylum claim that was successful that was ultimately revoked based upon his misrepresentation that he entered the United States and was seeking asylum from Iran when it turned out that he entered the United States from India. Based on the record as a whole, Your Honor, the board's decision is supported by substantial evidence that Ms. Allenberry was incredible and that she did not need her burden of proof that she was an Iranian citizen seeking asylum from Iran. Anything else? That's it, Your Honor. Thanks very much, Your Honor. The problem you have over there with the alleged children is my client always alleged she had no children. The transcript stated clearly she had no children, but then it changed in 1996 to show an answer from no to yes. That's what the judge relied on to find an adverse credibility finding, and then we found out that there was no such record, and the BIA, when it was remanded back from the nine, from, it was over here before, and oil asked for it to be remanded back, found that to be harmless error. At the age of 15, my client could not have given birth, and she was placed in Iran in 1977 by an eyewitness. Thanks very much.
judges: Pregerson, Clifton, Bea